USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 24, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JUAN CARLOS RODRIGUEZ

                    Plaintiff,

          -v-                         17-cv-12 (KBF)

THE CITY OF NEW YORK, POLICE        OPINION & ORDER
OFFICER MATTHEW GALE, DETECTIVE
HERAWATTIE JEEUTH, DETECTIVE
DEWAYNE LEE SHUE, and POLICE
OFFICER JOHN DOE 1-10,

                    Defendants.
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

      Plaintiff Juan Carlos Rodriguez ("Rodriguez" or "plaintiff") originally commenced this civil rights action on January 3, 2017, alleging, in sum, that defendants unlawfully arrested him in violation of 42 U.S.C. §§ 1981 and 1983, U.S. Const. amend. 4, and New York State law. (See generally Compl., ECF No. 1.) On January 23, 2018, the Court granted defendants' motion to dismiss the First Amended Complaint, and gave plaintiff one final opportunity to state a claim. (ECF No. 72.) Plaintiff subsequently filed a Second Amended Complaint on February 2, 2018, alleging substantially the same civil rights violations. (See generally Second Amend. Compl. ("SAC"), ECF No. 75.)

      Currently pending before the Court is defendants' motion for partial summary judgment under Fed. R. Civ. P. 56.[1]  (ECF No. 78.) Defendants argue,

---

[1] Defendants originally filed their motion as one for judgment on the pleadings under Fed R. Civ. P. 12(c). By Order dated March 9, 2018, the Court sua sponte converted the motion to one for summary judgment pursuant to Fed. R. Civ. P. 12(d). (ECF No. 83.)

inter alia, that plaintiff has failed to state a claim against Detectives Jeeuth and Lee Shue, failed to plausibly allege that his arrest was racially motivated, failed to state a claim for malicious abuse of process, failed to state a claim for failure to intervene, and failed to state a viable Monell claim against the City of New York. (See generally Mem. of Law in Supp. of Defs.' Mot. ("Defs.' Mem."), ECF No. 80.) Plaintiff opposed that motion on March 8, 2018 (ECF No. 81), and defendants replied on March 16, 2018 (ECF No. 86).

For the reasons stated below, the Court concludes that defendants' motion must be GRANTED.

I. BACKGROUND

A. Plaintiff's Arrest and Incarceration

The following facts are derived from the SAC and certain deposition excerpts submitted by plaintiff. The facts are uncontested unless otherwise noted for purposes of the pending motion.

On January 9, 2015 between approximately 3:00 to 4:00 a.m., plaintiff was at the window of a deli in the Bronx, New York. While plaintiff was waiting for delivery of an item he had purchased, Officer Matthew Gale ("Officer Gale") approached him and ordered him to "stop right there." Plaintiff informed Officer Gale that he "did not do nothing," and then, "fear[ing] for his life," ran away.

Following a foot chase, Officer Gale caught plaintiff and "slammed [him] to the ground." While plaintiff was on the ground, Officer Gale "punched [him] in the chest," then "turned [him] over and handcuffed him" in a painful manner. Officer

Gale then "dragged the plaintiff on the ground to a police van and threw him inside it," causing injuries to plaintiff's chin.  Plaintiff was subsequently brought to Lincoln Hospital, where he was treated for asthma-related symptoms.

Following treatment, plaintiff remained in police custody until his arraignment approximately twenty-four hours later.  Plaintiff was arraigned in the Bronx County Criminal Court, and was charged with two misdemeanors—attempted petit larceny (N.Y. Penal Law § 155.25) and attempted tampering with private communications (N.Y. Penal Law § 250.25).  Plaintiff alleges that Officer Gale "made false and misleading statements to the Bronx County District Attorney and others," which "formed the basis of the criminal charges against him."  After "a number of appearances," the criminal complaint was dismissed and sealed on October 7, 2015.

### B. Litigation History

As relevant here, plaintiff filed a SAC on February 2, 2018 alleging, in sum, that defendants violated his civil rights by "unlawfully arrest[ing], assault[ing] and falsely imprison[ing] him." (See SAC ¶ 1.)  Plaintiff alleges that defendants' unlawful actions "are part of a pattern of false arrests and civil rights violations against persons of color, as well as others, by members of The New York City Policy Department." (Id.)  Plaintiff further alleges that the motivation for defendants' pattern of unlawful arrests is "overtime compensation for the arresting officers and the statistical needs of the NYPD." (Id.)

3

The SAC contains a total of nine claims, eight of which constitute alternate theories of plaintiff's first claim—deprivation of rights under 42 U.S.C. §§ 1981 and 1983 ("Claim I"). (See SAC ¶¶ 38-89.) Specifically, plaintiff claims that the individual defendants violated § 1981 and/or § 1983 pursuant to the following theories: (1) assault and excessive force ("Claim II"); (2) false arrest/unlawful imprisonment ("Claim III"); (3) malicious prosecution ("Claim IV"); (4) abuse of process ("Claim V"); (5) violation of right to a fair trial ("Claim VI"); (6) failure to intervene ("Claim VII"); and (7) supervisory liability ("Claim VIII"). (See SAC ¶¶ 45-72). Plaintiff's ninth claim is for municipal liability against the City of New York under § 1983 and Monell v. Dept. of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978) ("Claim IX"). (See SAC ¶¶ 73-89.)

On February 23, 2018, defendants filed a motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (ECF No. 78.) Plaintiff opposed that motion on March 8, 2018, attaching excerpts from his own deposition, as well as from the deposition of Officer Gale. (ECF Nos. 81, 82.) Because plaintiff's opposition contained materials outside the pleadings, the Court sua sponte converted defendants' Rule 12(c) motion to one for summary judgment in accordance with Fed. R. Civ. P. 12(d). (See ECF No. 83.) Following conversion, the Court gave both parties an opportunity to supplement their filings with additional material; plaintiff chose not to do so, but defendants replied on March 16, 2018, attaching additional deposition excerpts and a copy of the underlying criminal complaint against Rodriguez (ECF Nos. 86-87).

4

II. LEGAL STANDARD

    A. <u>Summary Judgment</u>

Summary judgment may be granted when a movant shows, based on admissible evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). In reviewing a motion for summary judgment, the Court construes all evidence in the light most favorable to the nonmoving party, and draws all inferences and resolves all ambiguities in its favor. <u>Dickerson v. Napolitano</u>, 604 F.3d 732, 740 (2d Cir. 2010). The Court's role is to determine whether there are any triable issues of material fact, not to weigh the evidence or resolve any factual disputes. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

    B. <u>Section 1983 Liability</u>

It is well established in this Circuit that "[a]n individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation." <u>Littlejohn v. City of New York</u>, 795 F.3d 297, 314 (2d Cir. 2015) (internal citation and quotation marks omitted); <u>see also</u> <u>Farrell v. Burke</u>, 449 F.3d 470, 484 (2d Cir. 2006) (quoting <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled . . . that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") Further, "because personal involvement is a question of fact . . . summary judgment may be

5

granted only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law." Farrell, 449 F. 3d at 484 (quoting Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986)) (internal quotation marks and alterations omitted).

    C.    Municipal Liability

A municipality or other local government entity may be held liable under § 1983, but not on a theory of supervisory liability. See Monell, 436 U.S. at 692. Instead, a plaintiff may only prevail against a municipal entity if the allegedly unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or was done "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id. at 690-91. Thus, to make out a colorable claim of municipal liability under § 1983, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007) (quotation marks and citation omitted); see also Connick v. Thompson, 563 U.S. 51, 60 (2011).

"A municipal policy may be pronounced or tacit and reflected in either action or inaction." Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011); see also Ambrose v. City of New York, 623 F. Supp. 2d 454, 464 (S.D.N.Y. 2009) ("A custom need not be the result of a formal proclamation or law."). Further, a "custom or usage" may give rise to municipal liability where the "discriminatory practices of

6

city officials are persistent and widespread" such that "they could be so permanent and well settled as to constitute a custom or usage with the force of law." Sorlucco v. New York City Police Dep't, 971 F.2d 864, 870-71 (2d Cir. 1992) (quotation marks omitted); see also Connick, 563 U.S. at 61. "[B]efore the actions of subordinate city employees can give rise to § 1983 liability, their discriminatory practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco, 971 F.2d at 871. Conclusory allegations that a non-supervisory official "acted pursuant to a 'policy,' without any facts suggesting the policy's existence, are plainly insufficient." Missel v. Cnty. of Monroe, 351 F. App'x 543, 545 (2d Cir. 2009) (summary order); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.").

III. DISCUSSION

The Court's analysis of defendants' summary judgment motion is separated by defendant, and proceeds as follows: (1) claims against Detective Lee Shue; (2) claims against Detective Jeeuth; (3) the claim against the City of New York; and (4) remaining claims against Officer Gale.

A. Detective Lee Shue

It is clear that all claims against Detective Lee Shue must be dismissed. As an initial matter, the SAC does not specifically allege that either Detective Lee Shue or Jeeuth were personally involved in any of the deprivations at issue.

7

Indeed, the SAC does not allege that either Detective did anything at all with respect to plaintiff's arrest, assault, detention or prosecution. (See generally SAC.) The allegations in the SAC relate solely to Officer Gale, who was the arresting officer and the one who swore out the criminal complaint. As defendants correctly note, the SAC does not identify a single action that Detective Lee Shue or Detective Jeeuth took in connection with alleged events, and "does not even allege that Jeeuth or Lee Shue were physically present while the[] alleged events occurred." (Defs.' Mem. at 4-5.) In fact, the names "Jeeuth" and "Lee Shue" only appear three times each in the complaint—in the caption, in the description of parties, and in a brief listing of unrelated cases brought against each officer. (See SAC ¶¶ 10-11, 31.)

In opposing summary judgment, plaintiff cites deposition testimony from Officer Gale that purportedly implicates both Detectives in some or all of the alleged deprivations. But that deposition testimony is not enough to keep either Detective in the case as a matter of law. First, there is absolutely no evidence to suggest that Detective Lee Shue—who is male—was present at the moment of plaintiff's arrest or had any involvement whatsoever in plaintiff's post-arrest detention/prosecution. Officer Gale testified that neither Detective Lee Sue nor Jeeuth was present at the immediate moment of plaintiff's arrest. (See Supp. Decl. of Nana K. Sarpong ("Sarpong Decl.") Ex. D ("Gale Dep.") at 53:9-14, ECF No. 87-2 ("Q. When you wrestled Mr. Rodriguez to the ground . . . were either one of the two officers on the block when you did that? A. I couldn't see them on the block.").) This is consistent with plaintiff's own testimony, which is that no other officers were present at the

moment of arrest, and that a "female officer" was the only one to respond after he was cuffed. (See Sarpong Decl. Ex. C ("Rodriguez Dep.") at 86:17-87:3.)

Further, there is no evidence to support a claim against Detective Lee Shue based on failure to intervene. A police officer may be liable for failure to intervene under § 1983 where "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), aff'd sub nom. Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)). Here, the only testimony that even potentially implicates Detective Lee Shue is plaintiff's statement that there was "[p]robably another officer, light-skinned officer" present at the police precinct when he was taken out of the van. (See Rodriguez Dep. at 92:7-25.) Plaintiff asserts that this "light-skinned" officer was "undoubtedly defendant Lee Shue," but that is pure speculation. And even if the Court were to assume, without basis, that Detective Lee Shue was present at the precinct, there are no facts tending to suggest that (1) he had any opportunity to intervene at any point or (2) a reasonable officer in his position would know constitutional rights were being violated.

The mere fact that Detective Lee Shue was working with Officer Gale on the night in question is not sufficient to sustain § 1983 claims against him. Because plaintiff has not alleged and has not provided any factual support for Detective Lee

9

Shue's personal involvement in any of the alleged deprivations, all claims against Detective Lee Shue must be dismissed. See Littlejohn, 795 F.3d at 314.

B. Detective Jeeuth

The Court similarly concludes that all claims against Detective Jeeuth must be dismissed. As previously noted, Officer Gale testified that neither Detective Lee Shue nor Detective Jeeuth was present at the immediate moment of plaintiff's arrest. (See Gale Dep. at 53:9-14.) Officer Gale did testify, however, that Detective Jeeuth—who is female—assisted with "the recovery of evidence," which puts Detective Jeeuth in a somewhat different position relative to Detective Lee Shue. (See Decl. of Michael Colihan Ex. 1 ("Gale Dep.")[2] at 49:21-23; see also Rodriguez Dep. at 86:17-87:3.)

Although there are facts to support the assertion that Detective Jeeuth participated in the collection of evidence, there are no facts to support a § 1983 claim against her. Detective Jeeuth is not alleged to have personally tackled, arrested, handcuffed, dragged, detained, or prosecuted plaintiff, and there is no evidence to suggest that she did any of those things. Indeed, based on the record before the Court, Detective Jeeuth's involvement is limited to having been present on the scene after plaintiff was handcuffed to assist with the "recovery of evidence." But liability under § 1983 requires more than simply being on the scene—it requires personal involvement. See Littlejohn, 795 F.3d at 314. And even in the case of "failure to intervene," a plaintiff must demonstrate, inter alia, that the

---

[2] Both plaintiff and defendants submitted excerpts of Officer Gale's deposition testimony in connection with the pending motion. For clarity, the Court refers to both exhibits as "Gale Dep." for purposes of this Opinion & Order, with the appropriate page and line designation.

10

defendant (1) had a realistic opportunity to intervene, and (2) that a reasonable person in the defendant's position would know that the victim's constitutional rights were being violated. See, e.g., Jean-Laurent, 540 F. Supp. 2d at 512.

Here, the record is devoid of any factual support for the assertion that Detective Jeeuth could have intervened or that a reasonable officer would have known rights were being violated. Plaintiff has not provided any factual support at all for the assertion that Detective Jeeuth even witnessed any of the alleged deprivations, and the Court will not engage in baseless speculation. Accordingly, all of plaintiff's § 1983 claims against Detective Jeeuth, including the "failure to intervene" claim, must be dismissed.[3]

C. The City of New York

Defendants have additionally moved for summary judgment on plaintiff's Monell claim against the City of New York. (See Defs.' Mem. at 10-23.) As previously noted, a municipal entity may only be held liable under § 1983 if plaintiff can demonstrate the existence of an official policy or custom underlying the alleged constitutional violation. See Monell 436 U.S. at 690-91. Here, plaintiff has made no effort to allege or demonstrate an official policy pursuant to which the individual officers acted. Instead, plaintiff alleges that officers of the New York Police Department ("NYPD") regularly "subject[] citizens to excessive force, arrest[] people

---

[3] Defendants' original motion for judgment on the pleadings sought dismissal of all claims against Detective Jeeuth. (See Defs.' Mem. at 4-6.) Thus, it makes no difference that defendants' reply requests dismissal of all claims "[w]ith the exception of the failure to intervene claim." (See Reply Mem. of Law in Supp. of Defs.' Mot. ("Defs.' Reply") at 6, ECF No. 86.) Plaintiff was on notice of and responded to the original scope of defendants' motion, and for the reasons stated above, the Court concludes that plaintiff's failure to intervene claim against Detective Jeeuth must be dismissed.

11

without probable cause and engag[e] in a practice of falsification to conceal their abuse of authority." (SAC ¶ 75.) Plaintiff further alleges that NYPD engaged in a custom of "inadequate screening, hiring, investigation, retaining, training and supervision of its employees." (SAC ¶ 76.)

In effect, plaintiff has attempted to allege "discriminatory practices of city officials" that are so "persistent and widespread" that they "constitute a custom or usage with the force of law" for purposes of § 1983 liability. Sorlucco, 971 F.2d at 870-71. But here, plaintiff has done nothing to properly allege or substantiate any potential allegation that such a custom or usage actually exists. Plaintiff's conclusory statement that NYPD officers routinely engage in the type of conduct alleged here is plainly insufficient to survive summary judgment (and indeed, would be insufficient to survive a motion to dismiss). See Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir. 1992) (holding that when a plaintiff alleges municipal liability, "allegations which are nothing more than broad, simple and conclusory statements are insufficient"). Further, citation to unproven allegations in unrelated civil and criminal actions against NYPD officers—including the officers named in this complaint—are irrelevant to the alleged misconduct at issue in this case. Finally, the Supreme Court has held that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on failure to train." Connick, 563 U.S. at 61. Aside from conclusory statements regarding the City's failure to train and baseless invocation of the magic words "deliberate indifference," however, the SAC contains <u>no</u> factual allegations that would support such a claim.

Put simply, plaintiff has done nothing to demonstrate the sort of custom or usage required for municipal liability under Monell—he didn't do so in the SAC, and he has not since provided any evidence to supplement his insufficient pleading. Accordingly, plaintiff's claims against the City of New York fail as a matter of law, and must be dismissed.

D.  Officer Gale

By operation of this Opinion & Order, the Court has dismissed Detectives Lee Shue and Jeeuth and the City of New York from this action. Accordingly, the only remaining defendant is Officer Gale.[4] Defendants have sought summary judgment as to a number of claims brought against Officer Gale. The Court will analyze each in turn.

1. "Racial Targeting"

Defendants seek summary judgment as to any claim that plaintiff was targeted or arrested because of his race. (See Defs.' Mem. at 6-7.) As an initial matter, it is unclear to the Court precisely which claim or claims defendants' motion is directed to. The SAC does not include a distinct "racial targeting" claim, and although plaintiff alleges that defendants acted "with the intent to discriminate on the basis of race," (SAC ¶ 41), racial bias does not appear to be the sole alleged motivation underlying plaintiff's various § 1983 claims. For instance, other portions

---

[4] The case caption includes "Police Officer John Doe 1-10," but the SAC makes no specific allegations against any officers besides those individually named in the complaint. Further, plaintiff has made absolutely no attempt to identify any unnamed officers who may have been involved in his arrest and prosecution, and has produced absolutely no evidence that other officers should be included in this action. Accordingly, there is no basis at this stage for the Court to consider any potential "John Doe" officers as defendants in this action.

13

of the SAC allege that defendants were motivated by "overtime compensation for the arresting officers and the statistical needs of the NYPD." (SAC ¶¶ 1, 28, 58.)

That being said, the SAC does undeniably contain at least one allegation that defendants were motivated by racial bias, and defendants are correct that such allegation, to the extent it forms the basis of any claim, must be dismissed. To survive dismissal, a complaint must allege "enough facts to state a claim for relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In applying that standard, the Court accepts as true all well-pled factual allegations, but it does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. Here, plaintiff has not made any factual allegations and has not provided any factual support for the conclusory statement that defendants acted "with the intent to discriminate on the basis of race." Further, as defendants have correctly noted, plaintiff did not oppose defendants' motion with respect to any "racial targeting" claims. (See Defs.' Reply at 6.) As a result, to the extent any of plaintiff's § 1983 claims against Officer Gale are premised on an allegation of racial bias, such claims are hereby DISMISSED.

2. Abuse of Process

Defendants have also moved for summary judgment on plaintiff's abuse of process claim, which alleges, in sum, that defendants improperly caused plaintiff to

14

be arrested and prosecuted in order to obtain certain collateral objectives. (See SAC ¶¶ 56-59.) Defendants argue that although plaintiff has alleged an improper motivation underlying his arrest and prosecution, he has not properly alleged an improper purpose that would sustain an abuse of process claim. (See Defs.' Mem. at 7-8.) The Court agrees.

To maintain an abuse of process claim, plaintiff must show that the defendant: "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994)). As the New York Court of Appeals has held, the "gist of the action for abuse of process" is "the improper use of process after it is issued." Dean v. Kochendorfer, 237 N.Y. 384, 390 (1924). In other words, the allegation must be "that the [process] issued by defendants was improperly used after it was issued," not that "defendants acted maliciously in bringing the action." Curiano v. Suozzi, 63 N.Y.2d 113, 117 (1984); see also Hauser v. Bartow, 273 N.Y. 370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the court. It must further appear that he did something in the use of the process outside of the purpose for which it was intended.").

Here, plaintiff has alleged that Officer Gale arrested him and issued criminal process against him in order to "avoid discipline for their abuse of authority [and] to gain overtime compensation." (See SAC ¶ 58.) But plaintiff has not alleged that

15

Officer Gale, notwithstanding his motivation in issuing criminal process, has subsequently <u>used</u> that process in an improper fashion—<u>e.g.</u>, to extort money or to coerce some action. There is a sharp distinction between malicious prosecution and abuse of process claims. See <u>Hauser</u>, 273 N.Y. at 374. Plaintiff may have a claim against Officer Gale for malicious prosecution, but there are certainly no allegations or facts to support an abuse of process claim. Accordingly, plaintiff's abuse of process claim must be DISMISSED.

3. Failure to Intervene

Plaintiff's failure to intervene claim against Officer Gale must also be dismissed. The SAC alleges, <u>inter alia</u>, that Officer Gale directly violated plaintiff's constitutional rights under § 1983 by unlawfully arresting, assaulting, and prosecuting him without probable cause. (<u>See generally</u> SAC.) Because plaintiff has alleged that Officer Gale directly participated in the alleged misconduct at issue, Officer Gale cannot be held liable under a theory of failure to intervene. See <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in his presence <u>by other officers</u>." (emphasis added)). Plaintiff has conceded this point, and has not opposed summary judgment as to Officer Gale. (<u>See</u> Pl.'s Mem. of Law in Opp'n ("Pl.'s Mem.") at 10, ECF No. 81 ("Plaintiff does not know of any authority that an assaultive or perjurious police defendant is subject to an additional cause of action for failure to terminate or stop his own unlawful

16

behavior."). Accordingly, any failure to intervene claim against Officer Gale is hereby DISMISSED.

### 4. Supervisory Liability

Plaintiff's eighth claim alleges supervisory liability under § 1983. It does not appear from the face of the complaint or the parties' respective briefs that plaintiff intended to assert this claim against Officer Gale, who is: (1) not alleged to have been a "supervisory defendant" and (2) is alleged to have directly participated in the alleged misconduct at issue. However, to avoid any doubt, the Court hereby DISMISSES the supervisory liability claim to the extent it is asserted against Officer Gale.

## IV. CONCLUSION

For the reasons stated above, the Court hereby GRANTS defendants' motion for partial summary judgment at ECF No. 78 as to the following claims and defendants:

- All claims against defendant Detective Lee Shue;
- All claims against defendant Detective Jeeuth;
- All claims against "Police Officer John Doe 1-10";
- All claims against defendant City of New York; and
- Claims Five (abuse of process), Seven (failure to intervene), and Eight (supervisory liability), and any § 1983 claim based on racial bias against Officer Gale.

As a result of this Opinion & Order, the only remaining claims in this action are against Officer Gale. The Court will issue a separate Order forthwith clarifying the scope of the remaining claims and providing next steps.

Counsel for defendants is directed to serve this Opinion & Order on plaintiff and file proof of service on the docket.

The Clerk of Court is directed to terminate the open motion at ECF No. 78.

SO ORDERED.

Dated:     New York, New York
           May 24, 2018

                                          KATHERINE B. FORREST
                                          United States District Judge